SCHOTT, Chief Judge.
In these consolidated cases we granted certiorari in order to consider the validity of the trial court’s judgments overruling relators’ exceptions to the in personam jurisdiction of the court. Relators are Republic Savings & Loan, a Wisconsin Corporation, and First Federal Savings Bank, a Florida corporation. The issue is whether the activities of these financial institutions in Louisiana were sufficient to make them amenable to the jurisdiction of the Louisiana court under the state long-arm statute.
In both cases Security Homestead brought suit against its officers and directors and their insurer for losses incurred by Security on loans in which Security participated as a lender. The insurer of the officers and directors filed third party demands against relators in connection with two of the loans and they responded with exceptions contesting the court’s in personam jurisdiction over them.
One case arose out of a construction project in Idaho. In the early 1980’s, P.V.T., a California corporation, retained the services of I.M.I., another California corporation, to secure financing for the development of the Idaho project. P.V.T. then sold its interest in the project to D.E.L., another California corporation. I.M.I. obtained the financing for the project by 1983, using a “participation loan” package whereby a “lead lender” would advance a certain amount of the loan and “participating lenders” would advance the rest. I.M.I. solicited the lead lender, relator, Republic Savings and Loan, and the participating lenders, which included two Arkansas firms, one Rhode Island firm, one Pennsylvania firm, and Louisiana’s Security Homestead. Republic was not involved in the original negotiations in which these participating lenders were obtained. Security’s participation was for $4,700,000 out of a total of $16,300,000. The participation agreement provided that Idaho law would apply to any problems arising from the agreement. Under this agreement Republic assumed the role of the Principal *1386 and Security and the other lenders became participants. Republic would approve the loan documents, maintain custody of the documents, provide copies to the participants when requested, and administer and service the loan. In this connection it would monitor the construction, employ inspectors, review applications for change orders and advances, collect proceeds from the participants as the project progressed, and make all routine decisions in the administration of the loan. It would collect all payments from the borrower and remit to participants their shares, make records available to participants for inspection, inform participants of the progress of the project and enforce the loan provisions. Republic would receive a lead lender’s fee, its share of the commitment fee, and its share of the interest from the borrower but no revenue from the participants.
In 1984, it became apparent that the original loan amount was insufficient to complete the Idaho project. At the request of D.E.L., Republic began negotiations which culminated in an addendum loan agreement. Although almost all negotiations occurred in Idaho and Wisconsin, one meeting was held in Louisiana between an officer of Republic and at least one representative of Security. Republic kept Security informed of the loan status by frequent mailings of reports and telephone calls, and in a June 1984 letter Republic’s representative assured Security that its legal counsel carefully reviewed and clarified the loan documents in order to clarify the position of I.M.I. as no more than the broker in the transaction.
The other case arose out of a construction project in Florida. In 1983, the developer, Rudd, contacted relator, First Federal Savings Bank of Perry, Florida to obtain a loan to construct condominiums in Tallahassee. Because of the size of the loan needed, First Federal contacted R.M.C.I., a mortgage insurance company, in an attempt to find other interested potential lenders. R.M.C.I. gave them the name of Louisiana’s Security Homestead and another interested firm. First Federal contacted Security concerning the loan, and negotiations were held between the two companies. With respect to these negotiations, an officer of Security visited the proposed construction site in Tallahassee. Security eventually agreed to finance ninety percent of the loan, and the loan was closed in Florida.
After part of the project was completed, the developer fell into financial difficulties and defaulted on the loan. First Federal foreclosed on the loan in November, 1984. In January, 1988, Security acquired First Federal’s remaining ten percent interest in the project and took possession of the condominium units which had been built.
In this transaction First Federal made direct contact with Security and negotiated the Loan Participation agreement between them. This provided for a sale from First Federal to Security of 90% participation in the loan. It required First Federal to service the loan, to perfect Security’s title and preserve its rights, to remit collections to Security, and to take appropriate action in the event of default. Pursuant to the agreement Security ultimately put up $9,459,000 for the project. As the project approached collapse there were numerous contacts between First Federal and Security discussing the steps to be taken for the protection of Security’s interests.
A Louisiana court may exercise personal jurisdiction over a nonresident defendant pursuant to the Louisiana Long-Arm Statute, R.S. 13:3201, which provides in pertinent part:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident.
(1) Transacting any business in this state.
* # * * # *
B. In addition to the provisions of Subsection A, a court of this state may exer *1387 cise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
In Superior Supply v. Assoc. Pipe & Supply, 515 So.2d 790 (La.1987) the court made an exhaustive review of United States Supreme Court decisions which considered whether the exercise of personal jurisdiction over nonresidents was consistent with the United States Constitution and reached this conclusion at page 796:
The theme that emerges from this series of decisions, rendered over a period of more than forty years and authored by a number of different justices, is that when a nonresident who has purposefully established contacts and relationships with the forum state contests the assertion of personal jurisdiction, the court must analyze the quality and nature of the contacts, the relationship among the defendant, the forum and the litigation, and the evidence presented by the nonresident of facts militating against the exercise of jurisdiction, and must then determine whether the exercise of jurisdiction is reasonable.
The Superior case contained the element of prior solicitation of business in Louisiana by the Colorado defendant which was of great significance. But one of the reasons given by the court for its ultimate decision that constitutional considerations permitted the exercise of personal jurisdiction over the defendant was:
_defendant’s alleged failure to supply material in accordance with the contract caused foreseeable injury to a Louisiana resident, and this state has a manifest interest in providing its residents with a convenient forum for redressing contractual breaches by nonresidents who solicit business in this state. 515 So.2d at 797.
With respect to the question of jurisdiction over First Federal of Florida the foregoing principles provide the answer. While First Federal did not make the initial contact with Security, once it learned of Security’s “interest” in participating, First Federal made direct contact with Security, actively promoted its participation, and succeeded in negotiating a contract with Security under which Security would invest over $9,000,000 to finance the project and First Federal for all practical purposes would act as agent for Security in administering the loan. This construction project in Florida would never have taken place had First Federal not followed up on a lead and gotten Security involved. For all practical purposes all the money used (and lost) on the project was Security’s. By operating in Louisiana First Federal made the project take place and kept it going until it collapsed. Under the circumstances the exercise of in personam jurisdiction over First Federal is not unreasonable and does not offend due process considerations.
Although the position of Republic Savings of Wisconsin is stronger than First Federal’s we reach the same conclusion. Once I.M.I. brought Republic together with Security and the other participating lenders and they executed the participation agreement an ongoing relationship was established between Republic and Security in which Republic would handle almost $5,000,000 invested by Security in the project. While the agreement proclaims that Republic is not Security’s agent, Republic agreed to act like an agent in many significant respects. Performance of the contract obliged Republic to maintain contact with Security over a long period of time. While Republic’s representative came physically to Louisiana only once, Republic was constantly present in this state with mail and telephone communications.
The first question is whether these contacts by Republic in Louisiana were sufficient to qualify as “minimum contacts” with the forum state. Summing up several United States Supreme Court cases our Supreme Court recognized that an individual is not subject to the jurisdiction of a forum where he has established no contacts, ties, or relations. The contacts cannot be isolated, fortuitous, or attenuated. *1388 There must be a substantial connection between the defendant’s activities and the forum state, but physical entry into the forum state is not essential. Fryar v. Westside Habilitation Center, 479 So.2d 883, 888 (La.1985).
Applying these principles to the facts of this case we find that there were minimum contacts by Republic with the forum state. Far from being isolated, fortuitous, or attenuated, its contacts here were pursuant to a carefully conceived and deliberate plan, they were ongoing over a long period, they were substantial, significant, and productive. The substantial connection between Republic's activities and the forum state was its voluntary assumption of the role of Security’s agent or trustee in the administration of Security’s loan of almost $5,000,000 which involved constant contacts with Security to provide information, receive instructions, collect and remit funds, and act for Security with respect to the project the same as Security would act itself in the absence of a representative.
Fryar goes on to say that once minimum contacts are present they must be balanced with other factors to determine whether personal jurisdiction affords substantial justice, is reasonable and is compatible with fair play. Cf. Superior Supply v. Assoc. Pipe & Supply, supra. Factors to be evaluated include the burden on defendant, the forum state’s interest in obtaining the most efficient resolution of controversies, and the furtherance of fundamental social policies. Fryar at page 888.
The foregoing factors must be considered in the context of this particular law suit which resulted from Security’s involvement in a bad loan leading to a substantial financial loss. Republic’s attitude seems to be that it became involved and at all times remained in this transaction without ever leaving Wisconsin. In fact it voluntarily undertook the responsibility of collecting and administering substantial sums from financial institutions in several states including Louisiana and dispersing the funds on a project in Idaho. It also took on the responsibility of supervising and monitoring the Idaho project for the benefit of these other institutions. Assuming that its activities with respect to Security in Louisiana provide respondent with a legal basis for recovery against Republic, it seems that substantial justice can be afforded by the Louisiana court to all concerned. We fail to see why it is unreasonable and unfair to Republic to make it stand trial here. We fail to see that the burden placed on Republic to litigate here is so great. There are excellent lawyers to protect its interests here and modem technology makes the transmission of documents, communication, and transportation a relatively minor problem for a major financial institution. The forum state, Louisiana, has a strong interest in bringing all of the parties to the matter together under the control of its court in order to determine who should ultimately bear the loss now being shouldered by one of its own financial institutions. As for respondent, it has a legitimate interest in having the whole controversy resolved in one case as opposed to filing a separate suit in Wisconsin. Finally, “fundamental substantive social policies” would seem to include judicial economy which will be furthered by trying the whole case in Louisiana.
Accordingly, the judgments overruling the exceptions of in personam jurisdiction filed by relators are affirmed and the case is remanded to the trial court.
AFFIRMED AND REMANDED.