| iCULPEPPER, Judge Pro Tem.
The sole issue is whether the trial court correctly found insufficient minimum contacts to support personal jurisdiction in Louisiana courts over the Oklahoma defendant. H. Alton Spillers, the Louisiana plaintiff in a suit to recover $59,415.25 allegedly owed a Louisiana business, appealed the dismissal of his action against the Oklahoma corporation. Sustaining defendant’s exception to personal jurisdiction, the trial court found that Sierra Testing, Inc. had insufficient contacts with the state of Louisiana to warrant the court’s exercise of personal jurisdiction. The judgment is affirmed.

FACTS

Northeast X-Ray Services, Inc., a Louisiana corporation domiciled in Ouachita Parish, assigned its accounts receivable to H. Alton Spillers, plaintiff. As a pledge on the indebtedness owed by Northeast to Spillers, on January 7, 1993, Spillers recorded a security agreement in which Northeast transferred to Spillers all monies due Northeast on a number of accounts. Included were amounts owed to Northeast by Sierra Testing, Inc., an Oklahoma corporation. Spillers sent a demand letter to Sierra and, when payment was not received, filed this suit. Service was effected by the Longarm Statute. Sierra responded with a number of exceptions in- *211 eluding lack of personal jurisdiction which was granted by the trial court.
Northeast’s business was radiography, industrial x-raying of steel pipe, generally high-pressure gas lines, to determine if defects were present. Sierra also did industrial x-raying. Anthony Spencer, Sierra’s owner, gave the only testimony at the hearing. Spencer met Jerry Waggoner, head of Northeast, at a meeting in Oklahoma in 1990. The two reached a gentlemen’s agreement for the businesses to assist each other. Northeast owned internal crawlers, machinery which fit inside pipes and made x-rays at each weld. When Sierra needed internal crawlers, ^Northeast did that portion of the project and took those receivables while Sierra did the remainder of the job and kept the other receivables. Northeast did three separate jobs for Sierra: Koch Pipelines in western Kansas for a Kansas company in October 1991, Williams Companies project in central Kansas in spring 1992 and a Koch Pipelines project in Oklahoma in fall 1992.
Spencer testified that all of Sierra’s dealings with Northeast were through Jerry Waggoner. Aside from the hearing, the only times Spencer saw Waggoner was at their initial Oklahoma meeting in 1990 and in Tulsa where Waggoner traveled to check on the Williams Companies’ job with Spencer. Spencer stated that he and Waggoner communicated by telephone. Their correspondence was limited to his sending Northeast a check or two and Waggoner sending Sierra an invoice or two. Spencer also wired funds on two occasions to attorneys in Monroe when Waggoner was involved in litigation over the ownership of Northeast.
Except for his presence at the hearing, Spencer had been in Louisiana only on one occasion which was prior to his ownership and involvement with Sierra. Sierra did not sell or solicit anything in Louisiana. Sierra did not advertise or use facilities in Louisiana to promote its business. No Sierra employees have been to Louisiana on company business. Sierra was not registered to do business in the state of Louisiana.
Spencer acknowledged hiring, on Waggoner’s recommendation, Carey Ziegler, who worked for Sierra a short time in 1991. On one occasion Sierra loaned Northeast an employee, Larry Fields, for a period of approximately six weeks. Spencer denied that Sierra ever used any of Northeast’s employees.
The two companies loaned each other pieces of equipment. Spencer did not know the location of Sierra’s loaned equipment at the time of the hearing. In 1992 a ^Northeast employee took the equipment and stated he was taking it to Louisiana. Spencer stated the equipment was three x-ray tools, three or four control panels, four dollies and a camera.
Sierra retained possession of Northeast equipment at the time of the hearing. Sierra obtained one of the pieces of equipment when Waggoner was ousted from his position at Northeast. According to Spencer, Waggoner was legally required to store radiation emitting equipment with a licensee when a job finished. Waggoner had been ousted from Northeast and did not wish to return it to Northeast. Since Waggoner could not store it himself, an employee brought it to Sierra. Spencer did not recall how Sierra came to be in possession of the other Northeast equipment. However, he was certain that Sierra personnel did not go to Louisiana to get it. He speculated that Sierra personnel left a job site with it. At Waggoner’s request, Spencer sent a letter to Mr. Pinrod of the Louisiana Department of Environmental Quality verifying Waggoner’s information to DEQ about the proper storage of the equipment.
Reviewing the evidence filed into the record and the testimony of Spencer, the trial court noted that Sierra had no employees or agents in the state, was not doing business in the state, was not registered to do business in the state, had no representatives in the state, and had never contracted or done work in Louisiana. The trial court found that Sierra did not own movable or immovable property in the state and noted that all meetings between Sierra’s and Northeast’s personnel were outside the state of Louisiana. They kept in touch by telephone, had limited correspondence and had a meeting at a job site. Sierra borrowed equipment from Northeast. Northeast, in turn, borrowed *212 from Sierra. On one occasion Sierra borrowed an employee from Northeast. On another occasion Sierra hired an [4employee recommended by Waggoner for a short period of time in 1991. When Waggoner was involved in litigation about ownership of his company, Spencer wired money from Sierra to attorneys in Monroe in an effort to assist. The trial court found insufficient minimum contact to support personal jurisdiction.

DISCUSSION

LSA-R.S. 13:3201(A). provides, in pertinent part:
A. A court may exercise personal jurisdiction over a non-resident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the non-resident: (1) transacting any business in the state, (2) contracting to supply services or things in this state....
B. In addition to the provisions of subsection A, a court of this state may exercise personal jurisdiction over a non-resident on any basis consistent with the constitution of this state and of the Constitution of the United States.
The intent of this statute is to extend the personal jurisdiction of Louisiana courts over non-residents consistent with the due process clause of the XIV Amendment. Mayo v. Tillman Aero, Inc., 93-00467 (La.App. 3d Cir. 2-16-94) 640 So.2d 314.
In order to subject a non-resident defendant to personal jurisdiction, due process requires that the defendant must have certain minimum contacts with the forum state so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. A distinction has been recognized between the two types of personal jurisdiction, general and specific. When the state exercises personal jurisdiction over a defendant in a suit arising out of or related to a defendant’s contacts with the forum, the state is exercising specific personal jurisdiction over the defendant. When the state exercises jurisdiction over the defendant in a suit not arising out of or related to the defendant’s contacts with the Igforum, the state is exercising general personal jurisdiction over the defendant. deReyes v. Marine Mgt. & Consulting, Ltd., 586 So.2d 103 (La.1991).
Where the state seeks to exercise specific personal jurisdiction over an out-of-state defendant who has not consented to suit, the requirement of meaningful, minimum contacts is satisfied when the defendant has purposefully directed his activities at residents of the forum and litigation results from alleged injuries arising out of those activities. When the cause of action does not arise out of the defendant’s purposeful contacts with the forum, due process requires that the defendant engage in continuous and systematic conduct to support the exercise of general jurisdiction. Mayo v. Tillman Aero, Inc., supra.
Regardless of whether personal jurisdiction is sought under specific or general analysis, the court must apply a two-part due process test: (1) whether the non-resident defendant has established minimal contacts with the forum and (2) whether the maintenance of the suit does not offend traditional notions of fair play and substantial justice. deReyes v. Marine Mgt. & Consulting, supra. Whether a particular defendant has sufficient minimum contacts with the state is to be determined from the facts and circumstances of each individual case. Mayo v. Tillman Aero, Inc., supra.
Arguing on appeal that Sierra had sufficient minimum contacts with the state of Louisiana to support personal jurisdiction, Spillers points out that Sierra loaned equipment to Northeast, which had loaned equipment to Sierra. Spillers asserted that Sierra’s equipment is located in Louisiana. In Spillers’ view, the companies loaned each other employees and Sierra hired employees recommended by Northeast.
liiThe record does not support Spiller’s arguments. There is no evidence in the record that Sierra’s property is now in the state of Louisiana. The only testimony was that in 1992 a Northeast employee borrowed some Sierra equipment and stated the intended destination was Louisiana. Where that property is located now is unknown to Spencer. *213 Spencer stated that he used one Northeast employee for approximately six weeks on one occasion. Sierra stored some Northeast equipment, apparently as a favor to Waggoner after he was ousted from the company. Primarily, Spillers relies on the “on-going business relationship” between the two companies. That was described by Spencer as a gentlemen’s agreement which was apparently acted upon on three occasions.
In Superior Supply v. Assoc. Pipe & Supply, 515 So.2d 790 (La.1987), the non-resident Colorado corporation, a seller of pipe and related supplies, sent its employees to solicit sales in Louisiana and sold pipe to Louisiana residents. The particular sale was negotiated in a telephone conversation between defendant’s representative, who had previously come to Louisiana to solicit business from plaintiff and plaintiffs representatives who had been contacted by defendant. The Colorado defendant purposefully directed its business activities toward the forum. That sale was related to and more probably than not arose from the defendant’s business activities directed towards Louisiana. The court noted those contacts may have been too random or attenuated to provide general jurisdiction but that they were clearly related to the litigation and were not fortuitous or the result of unilateral activities of a third party. Jurisdiction was present even though the pipe was never shipped to or through Louisiana. Spiller’s argument that Sierra had more contacts with Louisiana than the non-resident in Superior Supply, supra, apparently ignores the fact that the Colorado defendant had solicited business by sending agents into |7the state of Louisiana. Spencer’s unrebutted testimony was that Sierra conducted no business in Louisiana, had no office here, was not licensed to do business here, sent no representatives here and did no work in this state.
Spillers also seeks to rely on language in deReyes, supra, that a non-resident defendant deliberately creates continuing obligations between itself and residents of the forum when defendant avails itself of.the privilege of conducting business there. In deReyes, a Hong Kong company established and operated a Louisiana corporate office. The Hong Kong company had systematic contact with a New Orleans company that acted for it. The dead seaman was hired by the Hong Kong company through its activities in Louisiana. The Hong Kong company availed itself of business contacts and relationships with Louisiana and the benefits derived therefrom. The Hong Kong company’s activities were continuous and systematic and sufficient for jurisdiction to attach. This record is devoid of any systematic contact by Sierra with Louisiana. In contrast, Sierra had no office or presence in the state of Louisiana. Its sole contact with the Louisiana company took place outside the state of Louisiana and all of the activities between the companies took place outside the state of Louisiana.
In order for personal jurisdiction to attach, a non-resident defendant’s connection with the state of Louisiana must be such that the defendant should have reasonably anticipated being haled into court in Louisiana. Langley v. Oxford Chemicals Inc., 25596 (La. App. 2d Cir. 3-30-94) 634 So.2d 950.
Based on the foregoing principles of law and the facts of this case, Sierra did not have sufficient minimum contacts with Louisiana to satisfy constitutional due process requirements and subject it to the personal jurisdiction of Louisiana courts. Under the facts and circumstances of this case, the trial court did not err in finding | gSierra had insufficient minimum contacts with Louisiana. Therefore, the trial court’s judgment sustaining the exception of personal jurisdiction and dismissing the suit against Sierra is affirmed at appellant’s cost.
AFFIRMED.