972 So.2d 392 (2007)
NEW INVESTMENT PROPERTIES, LLC
v.
ABC INSURANCE COMPANY, Orleans LeVee District and R P Beckendorf & Associates d/b/a ISU Coast Insurance Agency.
No. 2007-CA-0943.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2007.
*393 Robert L. Manard III, Paul E. Mayeaux, Robert L. Manard, PLC, New Orleans, LA, for Plaintiff/Appellant.
Gustave A. Fritchie III, Kelly G. Juneau, Irwin Fritchie Urquhart & Moore LLC, New Orleans, LA, for Defendant/Appellee.
*394 (Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY, and Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
New Investment Properties, L.L.C. and Creek Apartments Team, L.L.C., appeal the trial court's grant of R.P. Beckendorf & Associates' exception of lack of personal jurisdiction. For the reasons that follow, we reverse and remand.
FACTS
Plaintiffs-Appellants New Investment Properties, L.L.C. ("New Investment") and Creek Apartments Team, L.L.C. ("Creek Apartments") are both Louisiana corporations[1] and owners of Chenault Creek Apartments Phase I and II, located in New Orleans, Louisiana. Appellee R.P. Beckendorf & Associates, d/b/a ISU Coast Insurance Agency ("R.P. Beckendorf"), is a California corporation with its principal place of business in Los Angeles, California. R.P. Beckendorf, an independent insurance agency, obtained flood and wind policies for the apartment complex, which were delivered to Champion Group, Inc. ("Champion Group") also a California corporation with its principal place of business in Los Angeles, California. Stewart Jaffe and Michael Levitt, both residents of California, are managers of the New Investment and Creek Apartments L.L.C.s, and are also managers of Champion Group.
During Hurricane Katrina, the apartment complex incurred damages from the floodwaters. Appellants filed suit on August 24, 2006 against R.P. Beckendorf, ABC Insurance Company, and the Orleans Levee District in Civil District Court in Orleans Parish. With respect to R.P. Beckendorf, Appellants alleged in their petition for damages that R.P. Beckendorf negligently advised them by improperly evaluating Appellants' property and not following federal flood insurance guidelines, which resulted in Appellants' property being significantly underinsured for the flood damages sustained as a result of Hurricane Katrina.[2] R.P. Beckendorf filed *395 an exception for lack of personal jurisdiction, which was granted by the trial court on May 7, 2007. This appeal followed.
STANDARD OF REVIEW
Appellate courts reviewing an exception for lack of personal jurisdiction apply a de novo standard. Anderson v. Interamerican Mfg., Inc., 96-1639 (La.App. 4 Cir. 4/9/97), 693 So.2d 210, 212.
DISCUSSION
In their sole assignment of error, Appellants submit that the trial court erred as a matter of law in granting R.P. Beckendorf's exception for lack of personal jurisdiction. We agree.
Although R.P. Beckendorf is not licensed to do business in Louisiana, has no agent for service of process in Louisiana, has no offices or employees in Louisiana, and has not solicited or advertised for business in Louisiana, we find that R.P. Beckendorf nonetheless could have reasonably anticipated being brought into court in Louisiana as a result of the insurance policy it secured for Appellants' property in Louisiana.
La. R.S. 13:3201[3] permits the State of Louisiana to exercise personal jurisdiction over a nonresident, provided that the exercise of jurisdiction comports with due process. Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790, 792 (La.1987). Due process requirements are satisfied when the nonresident has "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The minimum contacts test involves an inquiry into whether a nonresident defendant has "purposefully availed" himself of the privilege of conducting activities in the forum state, "thus invoking the *396 benefits and protections of its laws." J. Wilton Jones v. Touche Ross & Co., 556 So.2d 67 (La.App. 4 Cir.1989)(quoting Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). A nonresident defendant's contacts with the forum state "must be such that the defendant should have reasonably anticipated being haled into court there." Sparks v. United States Fidelity and Guaranty Co., 93-2498 (La.App. 4 Cir. 2/11/93), 614 So.2d 290, 293, Ford v. Calo, 602 So.2d 787, 789 (La.App. 4 Cir.1992).
R.P. Beckendorf relies heavily on Sparks, supra, in support of its position that the company's connection with the Louisiana property was insufficient to establish minimum contacts. We find R.P. Beckendorf's reliance on Sparks is misplaced in this instance.
Sparks involved a Connecticut corporation, Connecticut Insurance Exchange ("CIE"), whose only contact with Louisiana was to mail a certificate of insurance to Louisiana. CIE was brought in as a third party by United States Fidelity & Guaranty Co. ("USF & G"), the insurer of the New Orleans Convention Center. USF & G alleged that CIE was contractually bound to indemnify them for all amounts that it might be required to pay in connection with a lawsuit filed by a plaintiff who was injured at the Convention Center during a food festival. The plaintiff named as defendants the City of New Orleans (the owner of the Convention Center) and its insurer, USF & G. The plaintiff also named Schwegmann Giant Super Markets, Inc., Robert Donnell Productions, Inc. ("Donnell") and Donnell's insurer, Western World Insurance Company ("Western World").
Donnell, a participant in the food festival, was required to provide a certificate of insurance stating that New Orleans Public Facility Management would be indemnified against claims for injury or loss arising out of acts conducted by Donnell during the festival and naming New Orleans Public Facility Management as an additional insured on Donnell's Western World policy. The certificate was created and then mailed from CIE (in Connecticut) to the Convention Center in Louisiana. This Court reversed the trial court's denial of CIE's exception for lack of personal jurisdiction, noting that CIE was a Connecticut corporation not licensed to do business in Louisiana; that CIE was the producer but not the insurer itself; that CIE did not have offices, employees, or agents in Louisiana; that CIE did not own property or have assets in Louisiana; and that CIE did not send representatives to or advertise or solicit business in Louisiana. This Court found that this single contact with Louisiana did not constitute "minimum contacts" sufficient to exercise personal jurisdiction and that "it would be unreasonable to assume that CIE should have anticipated being haled into court in Louisiana as a result of this act" because "[t]he act of mailing the certificate of insurance to Louisiana does not constitute a purposeful availment of the privileges of conducting business within Louisiana such as to invoke the benefits and protection of Louisiana law." Sparks, 614 So.2d at 294.
As this Court noted in Sparks, Louisiana courts have recognized that a nonresident defendant's single act can suffice to subject a defendant to personal jurisdiction. Id. at 293 (citing Babcock and Wilcox v. Babcock Mexico, 597 So.2d 110 (La.App. 4 Cir.1992), Security Homestead Association v. International Insurance Co. Inc., 546 So.2d 1384 (La.App. 4 Cir.1989)). Likewise, while physical entry into the forum state in not necessary to establish minimum contacts, "[t]here must be a substantial connection between the defendant's activities and the forum state" *397 and the nature of the contacts with the forum state may not be "isolated, fortuitous, or attenuated." Sparks, 614 So.2d at 293 (quoting Fryar v. Westside Habilitation Center, 479 So.2d 883, 888 (La.1985)). Jurisdiction is proper "where the contacts proximately result from actions by the defendant himself that create a `substantial connection' with the forum state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985)(citing McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)(emphasis in original)). "Thus where the defendant `deliberately' has engaged in significant activities within a State, or has created `continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Burger King, 471 U.S. at 475, 105 S.Ct. 2174 (internal citations omitted).
First, we find that the facts of the instant case are entirely distinguishable from Sparks. The insurance certificate in Sparks was procured for a nonresident business, not real property, and for only a brief and temporary period of time. Conversely, R.P. Beckendorf dispensed advice with regard to types of policies and levels of insurance coverage and ultimately secured various insurance policies for Appellants' real property in Louisiana.
Next, we find that it would be unreasonable to hold that minimum contacts were lacking simply because it was not essential for R.P. Beckendorf to solicit business, place telephone calls or mail documents to Louisiana in connection with the insurance policies for the Louisiana property. As the United States Supreme Court observed twenty-two years ago in Burger King, supra:
Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.
Burger King, 471 U.S. at 476, 105 S.Ct. 2174 (citations omitted). In the past twenty-two years, "modern commercial life" has changed significantly, and the need for physical presence in a state is presumably much less necessary today than at the time of the Burger King decision. Moreover, there is no dispute that R.P. Beckendorf was cognizant that the policies it procured were for property in Louisiana. An agent or broker who fails to procure the appropriate insurance policies or coverage for his clients can reasonably anticipate being haled into court;[4] thus, we find that R.P. Beckendorf knew or should have known that by obtaining insurance policies for property in Louisiana, it could be haled into court in Louisiana as a result of any alleged acts or omissions in procuring such coverage.
Having established that minimum contacts are present in this case, we *398 must next balance the contacts with other factors to determine whether the exercise of personal jurisdiction "affords substantial justice, is reasonable and compatible with fair play." Fryar, supra (citing International Shoe, supra; Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Burger King, supra; and Restatement (2d) of Conflict of Laws, §§ 36, 37 (1971)). "Factors to be evaluated include the burden on the defendant, the forum state's interest, the plaintiff's interest, the system's interest in obtaining the most efficient resolution of controversies, and the furtherance of fundamental substantive social policies." Fryar, supra.
It would clearly be a burden for R.P. Beckendorf, a California corporation, to defend a lawsuit to Louisiana. Appellants and the State of Louisiana, however, have a strong interest in seeing that Louisiana property owners who demonstrate that they were negligently advised when obtaining insurance coverage for property that was damaged by Hurricane Katrina be fairly compensated. See Fryar, supra. Similarly, there is a strong social policy against insurance brokers or agents negligently under-insuring their clients.
Therefore, we find that on the facts of this case, the exercise of personal jurisdiction over R.P. Beckendorf is reasonable and does not offend notions of fair play, and further, that it affords substantial justice. The trial court's grant of R.P. Beckendorf's exception for lack of personal jurisdiction is hereby reversed and remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
MURRAY, J., concurs with reasons.
TOBIAS, J., concurs in the result.
GORBATY, J., concurs for the reasons assigned by J. TOBIAS.
MURRAY, J., concurs with reasons.
I respectfully concur for the reasons assigned by Judge TOBIAS.
TOBIAS, J., concurs in the result.
I respectfully concur in the result on the basis of La. R.S. 13:3201. I have reservations in that result, however, because in my view the actual connexity to Louisiana is only that immovable property in Louisiana was owned by two Louisiana limited liability companies. Everything else occurred in California. But I also think that the insurance agent could reasonably anticipate that he might be brought into a Louisiana court if he acted negligently in connection with the procurement of insurance policies affecting Louisiana property albeit his actions and acts occurred elsewhere.
NOTES
[1] New Investment and Creek Apartments became Village Creek Apartments, L.L.C. in January 2007, with its domicile in Baton Rouge, Louisiana.
[2] The record contains conflicting affidavits with regard to whether R.P. Beckendorf ever communicated with Stuart Jaffe or Michael Levitt as representatives of New Investment and/or Creek Apartments (as opposed to communicating with Jaffe and Levitt in their capacity as managers of Champion Group). Appellants attached an affidavit from Philip Ogolsky, who affirmed that he was a duly authorized representative of New Investment and Creek Apartments, to their opposition to R.P. Beckendorf's declinatory exception of lack of personal jurisdiction. Mr. Ogolsky's sworn statements indicated that he, as a representative of New Investment and Creek Apartments, spoke with Dick Beckendorf personally regarding the flood insurance coverage for the Chenault Creek Apartments, and that New Investment and Creek Apartments retained R.P. Beckendorf to provide advice with regard to the type and amount of insurance to purchase for the Chenault Creek Apartments.

Conversely, R.P. Beckendorf attached to its exception of lack of personal jurisdiction an affidavit from John P. Beckendorf, whose sworn statement indicates it was Champion Group that requested R.P. Beckendorf to serve as their broker with regard to the flood insurance policies; that R.P. Beckendorf did not have any contact with any person from Louisiana with regard to the policies; and that all communications regarding the policies took place within California.
We note that the only correspondence in the record in connection with the insurance policies is a letter from R.P. Beckendorf to Stuart Jaffe as a representative of Champion Group, Inc. Further, we note that the record demonstrates that all communication regarding the Louisiana policies occurred within California. Because we do not make our findings based upon whether R.P. Beckendorf communicated with either or both of the Louisiana L.L.C.s, we pretermit discussion of whether R.P. Beckendorf actually communicated with New Investment and/or Creek Apartments as well as Champion Group.
[3] La. R.S. 13:3201 provides:

A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
[4] See, e.g., Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728 (La.1973); Taylor v. Sider, 99-2521 (La.App. 4 Cir. 5/31/00), 765 So.2d 416.