### SOUTHERN UNITED ICE CO. v. RAPIDES GROCERY CO., Inc., et al.

#### No. 1956.

Court of Appeal of Louisiana. First Circuit.

March 22, 1939.

**314**

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

Jos M. Blache, Jr., of Hammond, for appellee.

OTT, Judge.

The plaintiff seeks to recover from the Rapides Grocery Company, Inc., H. R. and T. D. Kemp the sum of $893.25, the price of ice which plaintiff claims to have sold and delivered to these three defendants in March and April, 1935, which ice was used by them in marketing a crop of radishes in Livingston Parish in pursuance of a joint adventure entered into by these three defendants in the early part of 1935. The petition alleges that the grocery company is a corporation domiciled in Rapides Parish and that the two Kemps are residents of Livingston Parish, however, the undisputed evidence is that H. R. Kemp is a resident of Allen Parish and T. D. Kemp is a resident of Livingston Parish.

The grocery company filed an exception to the jurisdiction of the court of Livingston Parish, ratione personæ, which exception was referred to the merits and later overruled. The grocery company filed an answer denying any liability for the ice bill, and denying that it entered into any joint agreement with the Kemps for growing and marketing a crop of radishes in Livingston Parish in 1935, but averred that it entered into an agreement with H. R. Kemp to furnish him with radish seed and fertilizer to be used by him in growing a crop of radishes; that one of the obligations of said H. R. Kemp in said agreement was to permit the said grocery company to market the crop of radishes grown by him for a fee of twenty five cents per crate; that it had no interest or ownership in the crop, but was induced to extend said H. R. Kemp credit for fertilizer and seed in the expectation of making a profit on said supplies and the marketing fee.

The grocery company further alleged in its answer that in a previous suit filed by it against T. D. Kemp in Livingston Parish to recover some paper, certain allegations were made in its petition to the effect that the grocery company delivered to said T. D. Kemp certain paper to be used by him in marketing a joint crop of radishes raised by him and the grocery company jointly; that said allegation was made inadvertently and through error of fact on the part of its president who was not at the time familiar with the agreement between the grocery company and H. R. Kemp with reference to the growing and marketing of the radish crop.

Neither of the Kemps filed any pleadings in this suit, and a judgment was rendered against all three defendants for the amount sued for. The Rapides Grocery Company, Inc., alone has appealed.

■ The appellant strongly urges its plea to the jurisdiction of the court, and we will give first consideration to this plea. As T. D. Kemp is a resident of Livingston Parish, it follows that the Rapides Grocery Company, Inc., could be sued in that parish with him if they are liable jointly or in solido for the ice bill. Paragraph 6 of article 165, Code of Practice, as amended by Act No. 156 of 1934. Of the three defendants, T. D. Kemp is the only one who resides in Livingston Parish and for the court of that parish to have jurisdiction over the grocery company, it must be shown that T. D. Kemp is jointly or solidarily liable with the grocery company for the ice bill, regardless of the nature of the liability of H. R. Kemp and the grocery company for this bill.

■ The contention of plaintiff is that the three defendants were engaged in a joint or partnership arrangement in growing and marketing the radish crop and that the ice was used in furtherance of that undertaking, thus rendering all three defendants liable jointly and in solido for the ice bill. Of course, if T. D. Kemp and the grocery company themselves, or with H. R. Kemp, were joint obligors in this venture of growing and marketing the radish crop, they would be subject to suit at the residence of either joint obligor, regardless of the existence of a partnership between them

and the kind and nature of that partnership. An obligation is said to be joint on the part of the obligors when two or more persons join in the contract to do the same thing. Civ.Code, art. 2080. In other words, a joint obligation is where two or more persons undertake as a whole or as one body to do some particular thing as a whole, each person contributing a part to the performance of the whole and rendering himself liable in proportion to the number of persons making the engagement, or in such proportion as they may have agreed upon. The joint undertaking may or may not constitute the persons partners.

Therefore, in order for the grocery company to be held as a joint obligor with T. D. Kemp for the purchase of ice for use in harvesting the radish crop, it must be shown that this company undertook to grow, produce and harvest this crop under some agreement with T. D. Kemp. Other than the allegation in the petition filed by the grocery company against Kemp already referred to, there is nothing to show any agreement, either express or implied, between the grocery company and T. D. Kemp by which they were engaged in a joint enterprise or partnership in growing and harvesting the radish crop.

On the contrary, the evidence shows that whatever agreement was had by the grocery company relative to this crop was had with H. R. Kemp of Allen Parish, and whatever joint agreement was entered into, if any, was between the grocery company and H. R. Kemp on the one hand and between H. R. Kemp and his brother, T. D. Kemp, on the other. Obviously, if there was a joint or partnership agreement between the grocery company and H. R. Kemp for raising and marketing the crop and a like agreement between H. R. and T. D. Kemp for growing and harvesting the crop, this fact would not create a joint or partnership arrangement between the grocery company and T. D. Kemp. "Socii mei socius, meus socius non est. * * * The partner of my partner is not my partner." Hazard v. Boyd, 4 Mart.,N.S., 347.

The grocery company claims that it agreed with H. R. Kemp to furnish him seed and fertilizer with which to grow and harvest the radish crop; that the company was to attend to the marketing of the crop and receive 25 cents per crate therefor, as well as retain out of the proceeds the amount of advances made to said H. R. Kemp for growing and harvesting the crop. The record shows that the company advanced the fertilizer and radish seed to H. R. Kemp and charged the same to his account on its books. The seed and fertilizer were shipped by the grocery company to T. D. Kemp in Livingston Parish, as it was understood by the grocery company and the Kemps that the radishes were to be grown on the lands of T. D. Kemp.

During the harvesting of the crop the grocery company advanced to H. R. Kemp something over twenty five hundred dollars to help cover the expenses for harvesting the crop and getting it ready for market. The company also purchased paper and boxes for use in harvesting the crop and preparing it for market, and also sent a representative to Livingston Parish to supervise the preparations for marketing the crop and to assist the Kemps in this respect. All advances made by the company for seed, fertilizer, cash, paper, boxes and other supplies were charged to H. R. Kemp on its books and records.

The radishes were crated and loaded in cars by the Kemps and were shipped in the name of the grocery company both as consignor and consignee. It is explained by the officers of the grocery company that the radishes were shipped in the name and under the control of the company for the reason that it had complete charge of the marketing of the crop and was to receive a commission on the sales and also reimburse itself for the advances made by it on the crop. However, because of the condition of the market, the crop did not realize enough to pay for the advances made on it, and of course the grocery company did not receive any commission for selling the crop nor did the Kemps receive any returns for the work which they had performed in growing and harvesting it.

The ice purchased from the plaintiff in this case for use in marketing the crop was shipped to H. R. Kemp and charged to him on the books of the ice company when the ice was furnished in March and April, 1935. However, in June, 1935, the plaintiff company sent a statement to the grocery company charging it with the ice and with a notation on the statement, "This ice delivered to Corbin, La., as per order of your Mr. H. R. Kemp." The name of T. D. Kemp nowhere appears on the books and records of the ice company as a debtor for the ice which had been charged orig-

inally to H. R. Kemp and later billed to the grocery company in the statement referred to above, and in which statement H. R. Kemp is designated as the agent of the grocery company.

This was the condition of the ice account when almost a year later the grocery company filed the suit against T. D. Kemp to recover some paper in his possession and in which suit the grocery company made the allegation, which it claims was made in error, to the effect that the company and T. D. Kemp were engaged in a joint enterprise of raising the radish crop in 1935. In his answer to that suit, T. D. Kemp admitted that he and the grocery company were engaged in a joint venture in growing and marketing the radish crop and he filed a reconventional demand against the company for a large amount which he claimed was due him under that agreement for radishes shipped by the company. The latter filed a supplemental petition in that suit setting up the error of fact under which the allegation of joint venture was made, and outlining the agreement that it had with H. R. Kemp with reference to the crop. The court in that suit denied the reconventional demand of T. D. ·Kemp, which, we assume, was in effect a rejection of the claim put forth by T. D. Kemp that he was a partner in the radish crop with the grocery company.

In this suit, the plaintiff company annexed a statement to its petition in which the grocery company, H. R. and T. D. Kemp are charged with the ice jointly. This suit was filed more than a year after the ice was sold and first charged to H. R. Kemp and later to the grocery company. It is also significant that T. D. Kemp was not included as one of the joint debtors until the grocery company had filed the suit against him in which the allegation was made that he and the company were engaged in this joint venture. It is clear that the change in its position by the plaintiff as to its debtors was a result of this allegation and as there is practically no other evidence to show that T. D. Kemp was jointly liable for the ice bill with the grocery company, it is necessary that we determine the effect of this allegation.

■ The declaration which a person makes in his pleading in a judicial proceeding makes full proof against the pleader, unless the declaration is shown to have been made through an error of fact. Civ. Code, art. 2291. But where it is shown by the pleader that the allegation was made through a misapprehension of the true state of facts, no estoppel arises against the pleader. Watkins v. Cawthon, 33 La.Ann. 1194. Nor can a litigant build his case on an allegation made by the pleader in a suit against a third person unless the litigant can show that he was misled or prejudiced by such allegation in his rights. Farley et al. v. Frost-Johnson Lumber Company, 133 La. 497, 63 So. 122, L.R.A.1915 A, 200, Ann.Cas.1915C, 717; International Projector Corporation v. Maricella, La. App., 144 So. 278.

■ · When the allegation was made by the grocery company against T. D. Kemp, on which allegation the plaintiff in this case is largely relying in support of its claim against the grocery company, the claim of plaintiff had already arisen and its rights were already fixed, and this erroneous allegation did not enlarge or restrict plaintiff's rights to collect for the ice which it sold. Moreover, the officers of the grocery company have explained in a satisfactory manner how this erroneous allegation was made in the former suit.

The president of the grocery company who gave the information to the attorneys on which the allegation was made was not an officer in the company when the deal was made by a former president with H. R. Kemp relative to this radish crop and he knew nothing of the details of that agreement. The paper which was sought to be sequestered in that suit was in the possession of T. D. Kemp, and it was necessary in order to secure the writ to make the necessary allegations as to why the paper was in the possession of T. D. Kemp. At the time, the former president who had handled the matter was out·of the state, and in the short time available it was not practical, for the new president to procure all the facts relative to this radish crop.

As there is not shown any joint or solidary liability of T. D. Kemp and the Rapides Grocery Co., Inc., for the payment of this ice bill, it follows that there is nothing on which to base the jurisdiction of the court of Livingston Parish. It is unnecessary for us to decide whether or not there is any joint or solidary liability on the part of H. R. Kemp and the grocery company for this account, and we make no finding on that question.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment against the Rapides Grocery Co., Inc., be and the same is hereby annulled, avoided and reversed, and it is now ordered that the exception to the jurisdiction of the court of Livingston Parish filed by said company be and the same is hereby sustained and the suit dismissed as to said company, and at the cost of plaintiff.