570 So.2d 195 (1990)
F. Kelleher RIESS, et al.
v.
Stephen G. ABSHIRE, et al.
Nos. 90-CA-121, 90-CA-417.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
Rehearing Denied December 17, 1990.
Writ Denied March 1, 1991.
*196 Donald V. Organ, New Orleans, for plaintiffs/appellants, F. Kelleher Riess and F. Kelleher Riess, A Law Corp.
Randy P. Roussel, Bradford & Roussel, A Professional Law Corp, and William C. Shockey, Shockey & Ziober, A Professional Law Corp, Baton Rouge, for defendants/appellees, Roland M. Toups and Kathryn B. Toups, David R. Carpenter and Erica, Johanna Wolff Carpenter, Hollis O. Graham and Ida R. Graham, Della J. Robin, Harry R. Layne and Janet J. Layne, Comprehensive Planning Co., Kenneth G. Fink, Jr. and Carol Fink, Donald L. McCollister and Sandra M. McCollister, Joseph W. Guitreau and Marie H. Guitreau, Frank E. Lanier and Nell T. Lanier, George and Dorothy Armstrong Wolcott.
Before KLIEBERT, BOWES and DUFRESNE, JJ.
BOWES, Judge.
Appellants F. Kelleher Riess, Attorney at Law, A Professional Corporation, and F. Kelleher Riess (hereinafter referred to jointly as Riess), appeal two judgments of the district court maintaining exceptions filed by certain defendants. We reverse and remand.
Appellants initially appealed a judgment maintaining an exception of improper venue in favor of Roland M. Toups and Kathryn B. Toups, David R. Carpenter and Erica Johanna Wolff Carpenter, Hollis 0. Graham and Ida R. Graham, Della J. Robin, Harry R. Layne and Janet J. Layne, Comprehensive Planning Company, Kenneth G. Fink, Jr. and Carol Fink, Donald L. McCollister and Sandra M. McCollister, Joseph W. Guitreau and Marie H. Guitreau and Frank E. Lanier and Nell T. Lanier.
Later, in the same proceeding, a judgment in favor of George A. Wolcott and Dorothy Armstrong Wolcott was granted, dismissing Riess' action against them, apparently on an exception to personal jurisdiction. Riess has also appealed this judgment. Both appeals were consolidated for hearing, but will be considered separately hereinbelow.

FACTS
Briefly, the underlying facts are as follows. In 1972, Mr. John C. Yemelos formed a partnership or joint venture called Casren Development Company. Casren undertook the project of developing the Biloxi Hilton Hotel in Biloxi, Mississippi. After obtaining a franchise, Yemelos obtained financing for the project at 4½ percentage points in excess of the prime interest rate of Chemical Bank of New York. Yemelos was aware that the interest to be charged would be usurious under Mississippi law if made to an individual or partnership. In order to take advantage of the depreciation and interest on an individual level, Mr. Yemelos desired to own the hotel through a partnership. A corporation, Argo Hotels, Inc., was formed to take title as an "agent" and obtain the loan.
Argo was the nominee corporation for the partnership. Casren was converted to a partnership in commendam, now called the Biloxi Hotel Properties Partnership (hereinafter BHPP). Several limited partners were admitted to BHPP in 1975, 1976, and 1977. Among the 1977 partners were Messrs. Carpenter, Fink, Guitreau, and McCollister. In July, 1977, the hotel properties were transferred by Argo to BHPP.
The Internal Revenue Service (hereinafter I.R.S.) audited the tax returns of the partners and partnership for the years 1975-1977. Each of the defendants, individual partners in BHPP, had claimed certain items of income, gain, loss, deduction, and credit under the presumption that the tax attributes arising from BHPP would flow to them as partners, and not to the corporate nominee. The I.R.S. denied the losses claimed by the individual partners and the matter was litigated as to certain "docketed" partners from the United States Tax Court as the trial court, through appellate courts and, finally, in the United States Supreme Court (where appellant Riess was ultimately victorious). The attorney who handled the matter in the Tax *197 Court had become a judge in that court and had withdrawn abruptly from the litigation. Yemelos, the general partner of BHPP, contacted Riess to respond to the appeals taken by the I.R.S. to the United States Courts of Appeal for the Fourth and Fifth Circuits.
Riess, in fact, did undertake the litigation in November of 1985 and handled it from that time on until its final conclusion. In 1988, the Supreme Court vacated decisions adverse to the BHPP partners, appellees herein, and remanded the cases to the Circuit Courts. Ultimately, the claimed losses were allowed to the individual partners. In May, 1989, after fruitless amicable demand, Riess filed suit against the individual partners for his claimed fee of $622,454.00.
Appellees herein filed several exceptions, including an exception of improper venue. Each alleged that he or she is a domiciliary of parishes other than Jefferson and contended that this action must be brought against each of them in the parish of their respective domiciles.
The exceptions were tried and, following the hearing, the court maintained the exceptions of venue as to those defendants. This appeal followed.
From the briefs filed in this matter, as well as from the transcript of the hearing, it appears that the defendants, at a trial on the merits, will urge that Riess undertook the litigation on behalf of the partnership, and that it is the partnership which is liable for any fees (BHPP is now in bankruptcy). Riess, on the other hand, vehemently contends that he represented the individual partners, and that it is they who are liable for the fee. In fact, it is the (77) individual partners whom Riess made defendants, and whom he has sued individually.

VENUE
The narrow issue before us is one of a proper venue for the suit. We note at the outset that a judgment resulting in a dismissal without prejudice is a final judgment from which an appeal will lie. Therefore, a judgment sustaining an exception of improper venue is a final appealable judgment. Pasquier, Batson, & Co. v. Ewing, 367 So.2d 28 (La.App. 2 Cir.1978); Thibodeaux v. Hood Enterprises, Inc., 405 So.2d 1249 (La.App. 1 Cir.1981).
The question of whether the partnership, BHPP, or the individual partners themselves are liable for Riess' fee is the issue to be decided on the merits at trial. The specific and only question before us now is whether Riess may maintain his suit, as it is presently drawn, against the partners now named as defendants, in the Parish of Jefferson. Whether or not appellants will prevail on the merits is not at issue at this time, although all parties have addressed these issues to some extent in their briefs on this appeal.
Riess maintains that a proper venue is in Jefferson Parish, as an exception to LSA-C.C.P. art. 42, on several grounds, including those in LSA-C.C.P. arts. 73 and 78. Those articles read as follows:
LSA-C.C.P. art. 42 states (in pertinent part):
"The general rules of venue are that an action against:
(1) An individual who is domiciled in the state shall be brought in the parish of his domicile; or if he resides but is not domiciled in the state, in the parish of his residence;
Art. 73. Action against joint or solidary obligors
A. An action against joint or solidary obligors may be brought in a parish of proper venue, under Article 42 only, as to any obligor who is made a defendant provided that an action for the recovery of damages for an offense or quasi-offense against joint or solidary obligors may be brought in the parish where the plaintiff is domiciled if the parish of domicile would be a parish of proper venue against any defendant under either Article 76 or R.S. 13:3203.
B. If the action against this defendant is compromised prior to judgment, or dismissed after a trial on the merits, the venue shall remain proper as to the other defendants, unless the joinder was *198 made for the sole purpose of establishing venue as to the other defendants.
Art. 78. Action against partners of existing partnership
Except as provided in Article 79, an action against a partner of an existing partnership on an obligation of the latter, or on an obligation growing out of the partnership, shall be brought in any parish of proper venue as to the partnership."
Because we find (as discussed hereinafter), that appellants allege a cause of action against the partners themselves as joint obligors, we pretermit discussion on the other issues or other assignments of error. The petition alleges that Darryl J. Tschirn resides in the Parish of Jefferson. Appellees never disputed nor denied at trial that Tschirn was a resident and, in brief, in fact, admit Tschirn's residency. Therefore, under C.C.P. art. 42(1), Jefferson Parish is unquestionably the proper venue in which to file suit against him, and, under C.C.P. article 73, an action against him permits suit against all other joint obligors.
Appellees' assertion in brief that "Article 73 does not apply since the various defendants/appellees in this case, are neither joint nor solidary obligors" is merely the statement of a legal conclusiona conclusion which is the precise question that is before us now for decision.
Joint obligations are defined in LSA-C.C. Article 1788, as follows:
"Joint obligations for obligors or obligees
When different obligors owe together just one performance to one obligee, but neither is bound for the whole, the obligation is joint for the obligors.
When one obligor owes just one performance intended for the common benefit of different obligees, neither of whom is entitled to the whole performance, the obligation is joint for the obligees."
In his petition, Riess alleges that Yemelos retained his services for the benefit of the partners; that, because of time constraints and an urgent need for immediate representation, it was impossible to obtain a collective authorization from the partners when the trial attorney abruptly exited from the case; that he quickly undertook the much needed representation of the partners; that the partners all received the benefit of the legal work done by him, profiting handsomely in their individual tax circumstances; and, essentially, requests that the court determine the portion that each defendant owes on the fees requested. It is not contended that any single one of the individual partners owes the entire fee to Riess. It, therefore, appears clear to this Court that Riess is alleging a cause of action against the defendant partners as joint obligors.
When an obligation is incurred in favor of several persons for the performance of something for their common benefit, it creates a joint obligation in their favor. Nabors v. Producers Oil Co., 140 La. 985, 74 So. 527 (1917). Nabors, although quite an old case, still appears to be the leading decision addressing the issue of joint versus several obligations. See Official Comments to LSA-C.C. art. 1788; also Pasquier, supra. While Nabors involved a written contract, we find the reasoning there to be applicable to the present case. As the court in Nabors found, the grantors of the oil lease "joined in one contract to do the same thing in consideration for advantages to be derived for the common benefit of all of them."
Joint obligations are discussed and defined again in Southern United Ice Co. v. Rapides Grocery Co., 187 So. 313 (La.App. 1 Cir.1939):
"An obligation is said to be joint on the part of the obligors when two or more persons join in the contract to do the same thing. Civ.Code, art. 2080. In other words, a joint obligation is where two or more persons undertake as a whole or as one body to do some particular thing as a whole, each person contributing a part to the performance of the whole and rendering himself liable in proportion to the number of persons making the engagement, or in such proportion as they may have agreed upon."
Intent has not always provided a satisfactory means of identifying joint obligations: *199 The intent of the parties is often very difficult to determine. See Comments, supra. The "intention of the parties" in the present case is clearly a matter for the trial court to determine at a full trial on the merits, at which time the facts may be fully developed. For instance, Taylor v. Loeb, 13 La.App. 327, 127 So. 637 (1930), involved a case in which two brothers were found jointly liable for an obligation to a nurse. There, the court determined that whether, in definite words, either brother actually agreed to pay the bills, the "tenor of the conversation" justified a belief that such was their intention. We cite this case merely to illustrate the difficulty in determining intent in these non-contractual situations and the resultant necessity of determining such at a full trial. See also Montelepre Memorial Hospital v. Kambur, 170 So.2d 214 (La.App. 4 Cir.1965) for similar reasons.
Accordingly, we hold that the appellants have alleged a cause of action against the individual partners as joint obligors, and one of the alleged joint obligors, Darryl Tschirn, is, in fact, a resident of Jefferson Parish. Therefore, venue is proper in Jefferson Parish under LSA-C.C.P. arts. 42 and 73, and the learned trial judge erred in maintaining the exceptions of improper venue filed by appellees. Therefore, that judgment is reversed and the case remanded for further proceedings.

JURISDICTION
The district court also maintained an exception of lack of personal jurisdiction filed by Dorothy Armstrong, wife of and George Wolcott, and dismissed them from the case. Again, we find that the trial court erred in maintaining the exception and dismissing appellants' claim as to them. Therefore, we also reverse this judgment and remand the issue for further proceedings. Testimony at the trial on the exception showed that the Wolcott defendants are residents of and domiciled in Tomball, Texas. Appellants seek to establish personal jurisdiction over the defendants in Louisiana under the "Long Arm" statute, LSA-R.S. 13:3201, which reads, in pertinent part, as follows:

Personal jurisdiction over nonresidents
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
. . . . .
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Whether or not service was properly effected under the Long Arm statute was not at issue at the trial of the exception presently under consideration, so we do not inquire into this aspect.
Mr. Wolcott testified that he and his wife have not maintained any residence in the state of Louisiana since 1970, and that they owned no property here. He never met with nor spoke to Riess, although he communicated with him by mail. He and Mrs. Wolcott are, however, partners in BHPP, a Louisiana partnership in commendam. Thus, they participated in a Louisiana business and took advantage of Louisiana law. Wolcott admitted that he traveled to Louisiana to "execute documents in connection with that partnership", and that he was aware that it was a Louisiana partnership domiciled in Jefferson Parish. The Wolcotts had not filed a Louisiana State tax return as a partner in BHPP, and he (or they) was also one of the "docketed" or named partners whose tax liability was at issue and was involved in the tax litigation, such litigation being the reason that Riess claims the fee which is the subject of the present suit. Wolcott also admitted he was aware of the tax litigation being tried in New Orleans, Louisiana. Thus, he acquiesced in same. He also employed a Louisiana C.P.A. to do his tax returns and even advised Riess on one occasion that this C.P.A. was authorized to act on his *200 behalf (as his agent). In addition, the Wolcotts asked for and received by certified mail interest calculations from Riess, who, of course, prepared same at his office in Louisiana.
Our Supreme Court analyzed the concept of personal jurisdiction over nonresidents as embodied in R.S. 13:3201, in the case of Superior Supply v. Assoc. Pipe & Supply, 515 So.2d 790 (La.1987). There, the court found that the 1987 amendment to the article, which added subsection B, was to be applied retroactively to provide jurisdiction over a nonresident whose conduct giving rise to the cause of action occurred prior to the effective date of the statute or amendment.
The 1987 amendment was designed to insure that the long-arm jurisdiction of a Louisiana court extends to the limits allowed by due process. See Official Comment Acts 1987, No. 418. When constitutional requirements of due process have been met, there is no longer a need to inquire into whether the defendant's conduct falls within the reach of the long-arm statute. Now, under the express terms of the present long-arm statute, the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements. If the assertion of jurisdiction meets the constitutional requirements of due process, the assertion of jurisdiction is authorized under the long-arm statute. The limits of Louisiana's long-arm statute and the limits of constitutional due process are now coextensive.
In McBead Drilling Co. v. Kremco, 509 So.2d 429 (La.1987), the Court conducted an exhaustive analysis of the due process requirements mandated by the Louisiana and United States constitutions as applied to jurisdiction and as provided for expressly in subsection B:
The theme that emerges from this series of decisions, rendered over a period of more than forty years and authored by a number of different justices, is that when a nonresident who has purposefully established contacts and relationships with the forum state contests the assertion of personal jurisdiction, the court must analyze the quality and nature of the contacts, the relationship among the defendant, the forum and the litigation, and the evidence presented by the nonresident of facts militating against the exercise of jurisdiction, and must then determine whether the exercise of jurisdiction is reasonable.14 Of course, particular relevant factors may be more or less important depending on the type of litigation and the nature of the defendant's business operation,
. . . . .
In the first contract case (McGee), the defendant purposefully extended its insurance business into the forum state, and it was not unreasonable to require the defendant to defend the litigation arising from the insurance policy issued as a result of that extension of business. In the Burger King case, the defendant, although never entering the forum state, purposefully established a contractual relationship with a forum resident and was unable to present compelling reasons which rendered the exercise of jurisdiction unreasonable.
In finding there that there was personal jurisdiction, the Court in McBead considered that the sale in question ...
was clearly related to and more probably than not arose from defendant's business activities purposefully directed toward Louisiana. While these contacts may have been too random or attenuated to provide general jurisdiction, the contacts were clearly related to the litigation and were not fortuitous or the result of unilateral activity of a third person.
. . . . .
this state has a manifest interest in providing its residents with a convenient forum for redressing contractual breaches by nonresidents who solicit business in this state.
In First Guar. Bank v. Attorneys Liability, 515 So.2d 1080 (La.1987), the Court again considered personal jurisdiction:
In order for a Louisiana court to exercise personal jurisdiction over a nonresident *201 defendant, there must be a state statute that authorizes the court to do so and the exercise of personal jurisdiction over the particular nonresident defendant must not offend the "traditional notions of fair play and substantial justice" embodied in the due process clause of the fourteenth amendment. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Petroleum Helicopters, Inc. v. AVCO Corporation, 513 So.2d 1188 (La.1987).
As observed above, in order for the exercise of Louisiana jurisdiction over the Wolcotts to be constitutionally permissible, they must have done business in this state or must have had sufficient "minimal contacts" with Louisiana so that the exercise of jurisdiction is reasonable and just and does not offend the "traditional notions of fair play and substantial justice" (due process), as mentioned in First Guar. Bank, supra. These contacts only have to be "minimal" because plaintiffs' cause of action against defendant "arises out of" or "relates to" the Wolcotts' contacts with or business done in Louisiana.
The United States Supreme Court has made it clear that jurisdiction is proper when the defendant's contacts with the forum are the result of the defendant entering into a contract that has a "substantial connection" with the forum state. First Guar. Bank, supra, citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The defendant's connection with the forum state must be such that the defendant should have reasonably anticipated being haled into court there; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); J. Wilton Jones Co. v. Touche Ross & Co., 556 So.2d 67 (La.App. 4 Cir.1989).
In Fryar v. Westside Habilitation Center, 479 So.2d 883 (La.1985), the Court discussed "minimum contacts" and personal jurisdiction:
The basic due process requirement for jurisdiction over a person is minimum contacts with the forum state. International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). An individual is not subject to the jurisdiction of a forum with which he has established no "contacts, ties or relations" International Shoe Company v. Washington, 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed, at 104. The contacts with the forum state cannot be "isolated", "fortuitous",14 or "attenuated".15 There must be a substantial connection between the defendant's activities and the forum state,16 but physical entry into the forum state is not essential. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Plaintiff's residence is not irrelevant to the inquiry, because defendant's relationship with plaintiff may enhance defendant's contacts with the forum. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).
A person must have fair warning that an activity may subject him to foreign jurisdiction. Burger King, supra. This allows a potential defendant some assurance as to where he will be liable to suit. World-Wide Volkswagen Corporation v. Woodson, supra; Burger King, supra. The requirement of fair warning is satisfied when a defendant has purposefully directed his activities at a resident of the forum,17 and the litigation results from foreseeable injuries arising out of or relating to those activities. International Shoe, supra; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Burger King, supra.
A nonresident party to a contract consummated in the forum state is subject to the forum state's in personam jurisdiction on causes of action arising out of the transaction. McGee v. International Life Ins. Co., supra; Burger King, supra. Compare Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Employee status does not insulate one from jurisdiction. Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

*202 When minimum contacts are present, they must be balanced with other factors to determine whether personal jurisdiction affords substantial justice, is reasonable and compatible with fair play. International Shoe Company v. Washington, supra; Schaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); World-Wide Volkswagen Corporation v. Woodson, supra; Burger King, supra; Restatement (2d) of Conflict of Laws, §§ 36, 37 (1971). Factors to be evaluated include the burden on the defendant, the forum state's interest, the plaintiff's interest, the system's interest in obtaining the most efficient resolution of controversies, and the furtherance of fundamental substantive social policies. World-Wide Volkswagen Corp. v. Woodson, supra; Burger King, supra.
Considering the activities of the Wolcotts as outlined above and in light of the jurisprudence cited herein, we find that they had sufficient, and more than minimal, contacts with the State of Louisiana, and unquestionably "transacted business in the state", all of which subjects them to the jurisdiction of Louisiana courts, without violating "due process." While Mr. and Mrs. Wolcott are Texas residents, they participated in a partnership organized under the laws of the State of Louisiana, which required numerous contacts with Louisiana, transacted business in the state, and travelled to and from the state to effectuate certain documents connected with the partnership. Any benefits resulting from participation in that partnership were available to them, including the tax benefits which were the subject of the federal tax suits successfully defended by Riess.
These contacts are clearly related to the present litigation, were not fortuitous, and, obviously, the Wolcotts purposely established a substantial relationship with this state. They should have been on fair notice that by entering into a Louisiana partnership litigation could foreseeably arise out of such an activityand when it did, in fact, arise, they had contacts with Louisiana residents concerning this litigation, acquiesced in its trial in Louisiana, and profited handsomely from Riess's activity and labor in defending them.
Also, as indicated in McBead, supra, Louisiana "has a manifest interest" in providing its residents with a convenient forum for redressing business grievances with nonresidents who have done business here.
In addition, there is no question but that judicial economy will best be served by permitting jurisdiction in Louisiana under the facts of this case and considering the large number of defendants.
Accordingly, we find that the district court was clearly in error in maintaining the exception to the jurisdiction. For the foregoing reasons, the judgment maintaining the Wolcotts' exception to the jurisdiction of Louisiana is reversed and the case remanded to the trial court for further proceedings.
Accordingly, judgments in appeal number 90-CA-121 consolidated with appeal number 90-CA-417 are reversed and remanded.
Appellees are each taxed with their respective share of all costs of each appeal.
REVERSED AND REMANDED.
KLIEBERT, Judge, concurring in part.
As for the defendants in case under Docket No. 90-CA-121, I agree that some of the defendants, particularly those who were "Docketed" in the tax litigation, may be joint obligors. However, there is simply insufficient evidence in the record from which to reach a conclusion as to other defendants, particularly those who were not "Docketed" in the tax litigation. For that reason, I believe the ruling of the trial court should be reversed and the case remanded with instructions to the trial judge to hold an evidentiary hearing and, after holding such a hearing, make a determination as to whether each defendant "may be" jointly liable.