693 So.2d 210 (1997)
Michael Patrick ANDERSON and Margaret Anderson
v.
INTERAMERICAN MANUFACTURING, INC., King Wholesale Supply Co., Inc., and Acoustical Specialties and Supplies, Inc.
No. 96-CA-1639.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1997.
*211 Jack Paul Showers, Gregory K. Moroux, Law Firm of ShowersMoroux, Lafayette, for Plaintiffs/Appellants.
Dominic J. Gianna, Brian G. Meissner, Middleberg, Riddle & Gianna, New Orleans, for Defendants/Appellees.
Before KLEES, LOBRANO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
This is a products liability personal injury case. One of the defendants, the manufacturer of the product involved, was dismissed from the case for lack of personal jurisdiction. The facts dispositive of the personal jurisdiction issue are undisputed and we find that, as a matter of law, there is personal jurisdiction over the manufacturer in this case. Therefore, we reverse and remand for further proceedings.
The plaintiff was injured while using a pair of Dura Stilts. These are stilts that are worn by workmen installing ceilings or doing drywall work or doing other work that requires some elevation. In the present case, Michael Patrick Anderson allegedly was injured when one of the Dura Stilts he was wearing allegedly collapsed. He alleges that the Dura Stilts were defective as to their design and/or manufacture. He sued the manufacturer of the Dura Stilts, Interamerican Manufacturing, Inc. ("IMI") as well as other parties not involved in this appeal. IMI filed an exception of lack of personal jurisdiction, discovery was conducted on the personal jurisdiction issue, and the exception was maintained after a hearing.
IMI manufactured Dura Stilts in Oklahoma.[1] IMI is an Oklahoma corporation. IMI is not licensed to do business in Louisiana, has never sought to be licensed to do business in Louisiana, has never had an agent for service of process in Louisiana, and never had any office or employees in Louisiana.
IMI has sold Dura Stilts to customers throughout the continental United States as well as customers in several other jurisdictions such as British Columbia, Puerto Rico and the United Kingdom. Copies of two exhibits prepared by IMI, showing Dura Stilts sales in dollar terms as to each state and jurisdiction, are attached hereto as an appendix.[2] IMI maintains an "800" toll-free telephone number which is effective throughout the continental United States and which can be used to order Dura Stilts.
IMI has sold Dura Stilts to at least eight, and perhaps as many as fourteen, "resellers" in Louisiana. That is, these Louisiana customers of IMI are not end users of the Dura Stilts but are drywall and paint suppliers and other merchants. During the time period for which information is available, sales to Louisiana constituted only a small percentage of IMI's sales of Dura Stilts. However, with the curious exception of Kansas, no one jurisdiction *212 accounts for more than a small percentage of IMI's sales.
The particular pair of stilts involved in this case was not purchased directly from any of IMI's Louisiana customers. Mr. Anderson's employer purchased them from King Wholesale, Inc. in Louisiana. King Wholesale, Inc. purchased the stilts from either Tieman Soles Company in Dallas, Texas or National Dry Wall Supply Company in Baton Rouge, Louisiana. Whether Tieman Sales Company or National Dry Wall Company purchased the stilts directly from IMI or instead through some further intermediary is not known. Thus, we will assume that the particular stilts involved in this case were not sold by IMI directly to any Louisiana customer. However, it appears to be uncontested that other pairs of Dura Stilts, sold by IMI to customers in Louisiana, were identical to the particular pair of stilts involved in this case.
Since the 1987 amendment to Louisiana's long-arm statute, La. R.S. 13:3201, the sole inquiry as to personal jurisdiction over a non-resident is whether the assertion of personal jurisdiction complies with constitutional due process. Fox v. Board of Supervisors, 576 So.2d 978, 983 (La.1991); Superior Supply Co. v. Associated Pipe & Supply Co., 515 So.2d 790, 792 (La.1987). Whether the assertion of personal jurisdiction complies with the requirements of due process is determined using a two-part test. First, the plaintiff must show that there are certain "minimum contacts" between the nonresident defendant and the forum state. If that is shown, then the burden shifts to the nonresident defendant to show if the assertion of personal jurisdiction, would be unreasonable "in light of traditional notions of fair play and substantial justice." de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 107 (La.1991). The determination of whether the assertion of personal jurisdiction is proper is an issue of law and is subject to de novo review on appeal. Zivalich v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, No. 95-CA-0169 (La.App. 4th Cir. 9/28/95), 662 So.2d 62, 64, writ denied, 95-C-2618 (La. 1/5/96), 666 So.2d 292.
The key precedent guiding our decision is McBead Drilling Co. v. Kremco, Ltd., 509 So.2d 429 (La.1987), a case in which our Supreme Court stressed the distinction between a nonresident manufacturer of an allegedly defective product and a non-resident local retailer of that product. The McBead court concluded that personal jurisdiction over a non-resident manufacturer is more readily found.
In McBead, a West Virginia corporation partially manufactured and sold a drilling rig to the plaintiff Arkansas corporation. The rig was delivered to the plaintiff Arkansas corporation's yard in southern Arkansas. The plaintiff subsequently moved the rig into Caddo Parish in northwest Louisiana. After the rig collapsed, the plaintiff Arkansas Corporation sued the defendant West Virginia manufacturer in a Louisiana court. The defendant West Virginia manufacturer had sales in twelve states and several foreign countries but had not made any sales to Louisiana residents and did not solicit in Louisiana in the regular course of business or do any advertising which would be expected to reach Louisiana. Indeed, the West Virginia manufacturer had almost no presale contacts with Louisiana.
The McBead court found that there was personal jurisdiction over the West Virginia manufacturer. In so holding, the McBead court distinguished, as not involving a manufacturer, the case of World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The McBead court also discussed Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), and noted that, while a plurality of the Asahi court wished to impose a requirement of conduct purposefully directed toward the forum state as a prerequisite to the exercise of personal jurisdiction over a non-resident manufacturer in a products liability suit, that view was not subscribed to by a majority. 509 So.2d at 433 n. 7. Accord Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415 (5th Cir.1993) (discussing World-Wide Volkswagen, Asahi and the "stream of commerce" theory of personal jurisdiction in products liability cases).
*213 The McBead court noted that the West Virginia manufacturer in that case had sold the rig "to an Arkansas drilling company which was located in the ArkLa-Tex triangle of oil drilling activity." 509 So.2d at 433. Thus, the West Virginia manufacturer sold the product to a customer very near to Louisiana which might well be expected to use the product in Louisiana. In the present case, it is not known to whom IMI sold the particular pair of stilts involved. On the other hand, the non-resident manufacturer in McBead had never made any sales in Louisiana whereas, in the present case, IMI had a history of sales of Dura Stilts to eight to fourteen "resellers" in Louisiana. Thus, IMI "should have reasonably anticipated being haled into court in Louisiana," 509 So.2d at 433, as to Dura Stilts even more than should have the McBead manufacturer as to the drilling rig. Thus, if personal jurisdiction existed over the non-resident manufacturer in the McBead case, then surely it exists over the non-resident manufacturer in the present case.
IMI's national sales of Dura Stilts, with the result that the particular pair of stilts in question ultimately were sold to Mr. Anderson's employer, at least when combined with IMI's sales directly to Louisiana "resellers" of Dura Stilts, is sufficient to constitute "minimum contacts" between IMI and Louisiana for purposes of personal jurisdiction. The assertion of personal jurisdiction over IMI does not appear unreasonable in light of traditional notions of fair play and substantial justice. Of course, it is usually somewhat more convenient for a party to litigate in its own home state, but we see no really serious burden upon or disadvantage to IMI of having the case proceed in Louisiana rather than Oklahoma. Also, of course, Louisiana has some interest in adjudicating a dispute involving an injury to one of its citizens and Mr. Anderson has an interest in proceeding in a Louisiana court as the most convenient forum for him. On balance, it is not unfair or unjust for IMI to be subjected to suit in Louisiana in this case.
For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings.
REVERSED AND REMANDED.

 APPENDIX
 EXHIBIT 2
 INTERAMERICAN MFG INC
 SALES BY STATE
FOR SIX MONTHS ENDING MARCH 31, 1990
ST 2,053,909.74 100.0%
AK 1,623.72 0.8%
AL 17,157.83 0.8%
AR 3,855.78 0.2%
AU 18,211.20 9.9%
AZ 23,763.06 1.2%
BC 27,271.63 1.3%
CA 176,678.43 8.6%
CN 4,129.36 0.2%
CO 16,776.55 0.8%
CT 9.506.43 0.5%
DE 165.59 0.0%
FL 52,051.36 2.5%
GA 192,885.34 9.4%
IA 44,557.63 2.2%
ID 503.10 0.0%
IL 28,054.78 1.4%
OM 18,806.06 0.9%
KS 472,485.71 23.0%
KY 2,307.56 0.1%
LA 4,951.67 0.2%
MA 38,537.07 1.9%
MD 25,226.94 1.2%
ME 475.80 0.0%
MI 42,317.83 2.1%
MN 35,610.43 1.7%
MO 29,605.94 1.4%
MS 2,328.93 0.1%
MT 1,794.42 0.1%
NC 38,391.62 1.9%
ND 4,478.37 0.2%
NE 8,404.50 0.4%
NJ 58,632.70 2.9%
NM 10.566.23 0.5%
NV 2,200.76 0.1%
NY 75,421.03 3.7%
OH 50,236.22 2.4%
OK 21,544.48 1.0%
OR 11,845.09 0.6%
PA 47,911.22 2.3%
RI 5,402.24 0.3%
SC 27,040.42 1.3%
SD 2,220.19 0.1%
TN 11,338.85 0.6%
TX 77,082.00 3.8%
UT 4,390.63 0.2%
VA 60,565.89 2.9%
VT 1,654.06 0.1%
WA 55,312.25 2.7%
WI 18,592.46 0.9%
WV 3,786.02 0.2%
EX 165,252.36 8.0%

*214
 EXHIBIT 7
 INTERAMERICAN MFG INC
 SALES BY STATE
 FOR YEAR OF 1991
ST 2,849,862.79 100.0%
AK 2,190.80 0.1%
AL 18,400.75 0.6%
AR 6.609.75 0.2%
AU 6,713.25 0.2%
AZ 48,126.20 1.7%
BC 25,212.50 0.9%
CA 205,436.67 7.2%
CN 2,594.94 0.1%
CO 61,928.23 2.2%
CT 13,368.55 0.5%
DE 553.85 0.0%
FL 37,606.02 1.3%
GA 276,981.17 9.7%
IA 48,375.69 1.7%
ID 2,576.05 0.1%
IL 63,851.40 2.2%
IN 27,968.43 1.0%
KS 469,379.93 16.5%
KY 16,181.56 0.6%
LA 16,013.88 0.6%
MA 38,428.16 1.3%
MD 41,703.23 1.5%
ME 182.94 0.0%
MI 75,710.98 2.7%
MN 61,598.57 2.2%
MO 44,193.07 1.6%
MS 6,544.92 0.2%
MT 4,984.05 0.2%
NC 70,107.69 2.5%
ND 9,912.55 0.3%
NE 22,125.57 0.8%
NH 571.81 0.0%
NJ 67,926.58 2.4%
NM 22,715.24 0.8%
NM 9,403.48 0.3%
NY 92,042.28 3.2%
OH 117,208.44 4.1%
OK 34,133.72 1.2%
ON 5,069.85 0.2%
OR 36,162.17 1.3%
PA 78,076.24 2.7%
RI 2,420.92 0.1%
SC 25,161.87 0.9%
SD 2,711.29 0.1%
TN 21,761.77 0.8%
TX 157,629.56 5.5%
UT 14,014.42 0.5%
VA 79,918.02 2.8%
WA 96,057.35 3.4%
WI 46,211.99 1.6%
WV 2,407.87 0.1%
EX 212,696.57 7.5%

NOTES
[1] It appears that, subsequent to the time period relevant to this case, IMI shifted the manufacturing of Dura Stilts to Puerto Rico.
[2] The list includes "EX" which stands for "export" and denotes the United Kingdom.